IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| JOSEPH WILLIAMS, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-13-2453 |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

This Memorandum Opinion addresses the Motion to Dismiss that Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") filed, ECF No. 13, along with a Memorandum in Support, ECF No. 13-1; *pro se* Plaintiff Joseph Williams's Opposition, ECF No. 17; and Defendant's Reply, ECF No. 18, as well as Plaintiff's Motion to Amend Complaint and to Issue a Preliminary Injunction and Temporary Restraining Order, ECF No. 19; and Defendant Freddie Mac's Opposition, ECF No. 20. Plaintiff has not filed a reply to Defendant's Opposition, and the time for doing so has passed. *See* Loc. R. 105.2. A hearing is not necessary. *See* Loc. R. 105.6. For the reasons that follow, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.

I.     **BACKGROUND**

Plaintiff filed suit in the Circuit Court for Prince George's County against Defendant Freddie Mac and seven others that Plaintiff characterizes as "Freddie Mac Agents." Compl. 2 & ¶ 8, ECF No. 2. He claimed that he entered into a sales contract that Freddie Mac drafted for

purchase of residential property (the "Property"), and the "inaction" of Freddie Mac and the Freddie Mac Agents "prevented [Plaintiff] from performing his obligations under the Sales Contract and deprived [him] of the opportunity to lock-in a lower interest rate for the Fidelity mortgage loan." *Id.* ¶¶ 2, 9 & 25. Plaintiff's Complaint includes three counts: Breach of Contract (Count I), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II), and Interference with Contract – Sales Agreement (Count III). *Id.* at 10–11. Notably, Plaintiff sought monetary damages and a preliminary injunction; he did not ask the Court for specific performance or other permanent equitable relief. *See id.* at 11–12. On August 13, 2013, Plaintiff moved for a temporary restraining order ("TRO") "to prevent the named defendants . . . from entering into agreements to sell and from selling, transferring or otherwise disposing of the property . . . to a buyer other than Plaintiff," Pl.'s Mot. 2, which the state court granted. Def.'s Opp'n 2.

On August 21, 2013, Freddie Mac removed the case to this Court. ECF No. 1. I denied without prejudice Plaintiff's Motion for *ex Parte* Temporary Restraining Order and Issuance of Attachment, ECF No. 3. Sept. 17, 2013 Ltr. Order 1, ECF No. 16. Additionally, I stated that the state court's TRO would be dissolved effective October 8, 2013 "unless Plaintiff demonstrate[d] *prior to* October 8, 2013, by renewing his Motion, that there continues to be a good faith basis in law and fact for asserting that the criteria for a temporary restraining order continue to exist." *Id.* (emphasis added). In doing so, I noted that Plaintiff sought monetary damages and a preliminary injunction but did not seek specific performance or other permanent equitable relief.

On October 8, 2013, Plaintiff filed his Motion to Amend Complaint, stating that he "seeks specific performance of Freddie Mac's obligations under the Sales Agreement as well as monetary damages," and requesting that the Court "recognize Plaintiff's request for specific

2

performance and grant Plaintiff 45 days to amend the complaint." Pl.'s Mot. 2. At the same time, Plaintiff renewed his motion for a preliminary injunction and TRO, relying on his request for specific performance and contending that he "will suffer irreparable harm because rights to the property will transfer to a third party." *Id.*

## II. DISCUSSION

In determining whether a plaintiff may amend, the Court considers, *inter alia*, whether amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013). It is true that, as Defendant notes, in Plaintiff's Motion to Amend Complaint, he seeks to request additional relief without modifying how he has pleaded any of his three causes of action, despite the fact that Defendant's Motion to Dismiss is pending. Therefore, if Plaintiff's claims are not sufficiently pleaded, amendment will be futile because the Complaint still will be subject to dismissal. Also, in determining whether a plaintiff is entitled to a preliminary injunction or TRO, the Court considers, *inter alia*, whether the plaintiff is likely to succeed on the merits. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Whether Plaintiff has stated a claim in his Complaint is relevant to both considerations. Therefore, I will begin by addressing Defendant's Motion to Dismiss for failure to state a claim.

### A. Defendant's Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency

3

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, the Court accepts the facts that alleged in the complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011). Also, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).

Freddie Mac owns the Property that Plaintiff seeks to purchase. Compl. ¶¶ 2, 9 & 11. Plaintiff entered into a contract to purchase the Property from Freddie Mac (the "Contract") for $202,000, with Freddie Mac contributing $6,060 toward Plaintiff's closing costs. *Id.* ¶¶ 9 & 11. Plaintiff provided Freddie Mac with a $7,000 earnest money deposit. *Id.* ¶ 12. The Contract provided that Plaintiff would obtain financing to purchase the Property "within an unspecified amount of time." *Id.* ¶ 13. According to Plaintiff, "Freddie Mac or Freddie Mac Agents know that it was required to execute ancillary documents, undertake ministerial acts and perform other customary seller obligations in order for the Buyer [i.e., Plaintiff] to obtain a residential mortgage loan to purchase the Property." *Id.* ¶ 16. Additionally, one of the Freddie Mac Agents "represented to Buyer that Freddie Mac would send to Buyer executed documents reflecting nonmaterial revisions to the Sales Contract . . . , which included extending the Sales Contract settlement date," but Freddie Mac never sent the documents, *id.* ¶¶ 18–20. The Freddie Mac Agent failed to return Plaintiff's calls and emails in May and June 2013 and "stopped communicating with Buyer and Fidelity [First Mortgage, the lender,] abruptly," *id.* ¶¶ 21–22. Plaintiff claims:

> The inaction on the part of Freddie Mac and Freddie Mac Agents, including failing to execute ancillary documents, undertake ministerial acts and perform other customary seller obligations in order for the Buyer to obtain a residential mortgage loan to purchase the Property, prevented buyer from performing his obligations under the Sales Contract and deprived Buyer of the opportunity to lock-in a lower interest rate for the Fidelity mortgage loan.

*Id.* ¶ 25. In July, another Freddie Mac Agent informed Plaintiff that he was "'in the same situation as all other buyers that are bidding on [the Property].'" *Id.* ¶ 35. Freddie Mac retained Plaintiff's earnest money deposit but "entered into a new agreement to sell the Property to another buyer for a higher price." *Id.* ¶ 36.

Plaintiff attached the Contract to his Complaint. ECF No. 1-2.[1] The Contract provides for the purchase of the Property for $202,000.00 and sets a settlement date of May 24, 2013, at which time it states that "[t]he purchase price less any and all Deposits shall be paid in full by Buyer in cash, wired funds, bank check, certified check or other payment acceptable to the settlement officer." Contract ¶¶ 6–8. It states that "Buyer's obligation to purchase the Property is contingent upon Buyer obtaining a written commitment for a loan secured by the Property . . . ." *Id.* ¶ 9. The Contract also provides that if "written financing is not obtained by Buyer within _____ (_____) days from the Date of Contract Acceptance: (1) Seller, at Seller's election and upon written notice to Buyer, may declare this Contract null and void and of no further legal effect," *id.* ¶ 10, but as the space provided for the number of days was left blank, the Contract does not set a deadline for buyer to obtain written financing. *See id.* Nonetheless, pursuant to the Contract, "Buyer and Seller are required and agree to make full settlement in accordance with the terms of this contract and acknowledge that failure to do so constitutes a breach hereof." *Id.* ¶ 33.

Of import, the Contract states that "[t]his Contract and any addenda thereto contain the final and entire agreement between the parties, and neither they nor their agents shall be bound by any terms, conditions, statements, warranties or representations, oral or written, not herein contained," and that "[o]nce signed, the terms of this Contract can only be changed by a document executed by all parties." *Id.* ¶ 55. Moreover, it also provides:

> TIME IS OF THE ESSENCE. Time is of the essence of this Contract. The failure of Seller or Buyer to perform any act as provided in this Contract by a prescribed date or within a prescribed time period shall be a default under this Contract and the non-defaulting party, upon written notice to the defaulting party,

---

[1] These exhibits appear as an exhibit to Defendant's Notice of Removal, although they were not filed with the Complaint, as they should have been, when Defendant removed the case from state court.

6

> may declare this Contract null and void and of no further legal force and effect. In such event, all Deposit(s) shall be disbursed in accordance with Paragraph 19 of this Contract.

*Id.* at 1. The only written amendment to the Contract, attached as an exhibit along with it, simply corrects the spelling of Plaintiff's name. Thus, regardless what representations the Freddie Mac Agents may have made to Plaintiff, the terms of the written Contract govern Freddie Mac's sale of the Property to Plaintiff. *See* Contract ¶ 55. Further, to the extent that Plaintiff's recitation of facts differs from the terms of the Contract, I must consider the terms of the Contract in determining whether Plaintiff stated a claim. *See Fayetteville Investors*, 936 F.2d at 1465; *Azimirad*, 2011 WL 1375970, at *2–3.

As noted, Plaintiff's three counts are for breach of contract, breach of the implied covenants of good faith and fair dealing, and interference with contract. Preliminarily, I note that breach of the implied covenants of good faith and fair dealing is not an independent cause of action. *Mount Vernon Props., LLC v. Branch Banking & Trust Co.*, 907 A.2d 373, 381 (Md. Ct. Spec. App. 2006);[2] *Corp. Healthcare Fin., Inc. v. BCI Holdings Co.*, 444 F. Supp. 2d 423, 434 (D. Md. 2006); Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* 61 (MICPEL 4th ed. 2008). Rather, it "'is merely part of an action for breach of contract,'" as "'[t]he implied duty of good faith "prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract."'" *Mount Vernon Props.*, 907 A.2d at 381 (quoting *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002) (citation omitted)). Therefore, I construe Plaintiff's first and second counts to be one count for breach of contract, based on breaches of the express contractual terms and the implied covenants of good faith and

---

[2] The Contract provides that it "shall be interpreted and construed in accordance with the laws of the State of Maryland." Contract ¶ 55.

fair dealing. *See* Fed. R. Civ. P. 1; *see also Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 792 n.1 (D. Md. 2010) (explaining that Rule 1 instructs the Court "not [to] exalt form over substance"); *Hall v. Sullivan*, 229 F.R.D. 501, 504 (D. Md. 2005) (same).

   *1. Breach of contract*

A claim for breach of contract must "'allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (emphasis removed) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 369 A.2d 566, 569 (Md. 1977)). A contract exists where there is "'mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549, at *9 (4th Cir. Apr. 19, 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)). A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)).

Plaintiff sufficiently alleged the existence of the Contract, which he attached to his Complaint. Yet, he has not alleged sufficiently that Defendant breached the express terms of the Contract. Rather, a review of the Contract shows that time was "of the essence" and Plaintiff was obligated to "make full settlement," including payment in full, by May 24, 2013. Contract 1 & ¶¶ 7–8, 33. Further, Plaintiff needed to secure written financing to purchase the Property. *Id.* ¶¶ 10–11 & 33. However, Plaintiff did not secure written financing and admits that he did not "perform[] his obligations under the Sales Contract," although he contends that Defendants

"prevented" him from doing so. Compl. ¶ 25. Thus, Plaintiff's Complaint does not establish that Defendant breached the Contract; to the contrary, it appears that Plaintiff breached the Contract.

As for the alleged breach of the implied covenants of good faith and fair dealing, "the duty of good faith merely obligates a lender to exercise good faith in performing its contractual obligations; it does not obligate a lender to take affirmative actions that the lender is clearly not required to take under its loan documents." *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992). Put another way, "that duty concerns the 'performance and enforcement' of the contract itself." *Blondell v. Littlepage*, 991 A.2d 80, 90 (Md. 2010) (quoting 2 *Corbin on Contracts*, § 5.27 at 139 (Rev. Ed. 1995); citing 23 *Williston on Contracts*, § 63.21 at 498 (4th ed. 2002)). Thus, although the duty "'requires that one party to a contract not frustrate the other party's performance, it is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise.'" *Id.* at 91 (quoting *E. Shore Markets, Inc. v. J.D. Assocs., Ltd.*, 213 F.3d 175, 184 (4th Cir. 2000)). Indeed, "'an implied duty is simply a recognition of conditions inherent in expressed promises.'" *Id.* (quoting *E. Shore Markets, Inc.*, 213 F.3d at 184).

Plaintiff claims that "Freddie Mac or Freddie Mac Agents know that it was required to execute ancillary documents, undertake ministerial acts and perform other customary seller obligations in order for the Buyer to obtain a residential mortgage loan to purchase the Property." Compl. ¶ 16. But, Plaintiff does not allege what documents Defendants were required to sign or what other obligations Defendants purportedly had. These vague allegations are insufficient for the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. Moreover, the Contract does not contain a provision requiring

Defendants to "execute ancillary documents" or take any actions to enable Plaintiff to obtain financing, such that a failure to do so is not a breach of the implied covenants of good faith and fair dealing. *See Blondell*, 991 A.2d at 91; *Parker*, 604 A.2d at 531. Plaintiff also claims that one of the Freddie Mac Agents "represented to Buyer that Freddie Mac would send to Buyer executed documents reflecting nonmaterial revisions to the Sales Contract . . . , which included extending the Sales Contract settlement date," but Freddie Mac never sent the documents, Compl. ¶¶ 18–20, and the Freddie Mac Agent failed to return Plaintiff's calls and emails in May and June 2013 and "stopped communicating with Buyer and Fidelity abruptly," *id.* ¶¶ 21–22. Although these alleged actions and failures to act, if true, are unfortunate, they do not amount to a breach of the implied covenants of good faith and fair dealing because they pertain to actions beyond Defendants' contractual obligations. *See Blondell*, 991 A.2d at 91; *Parker*, 604 A.2d at 531. Therefore, Plaintiff has failed to state a claim for breach of contract based on a breach of the express terms or the implied covenants of good faith and fair dealing, and Counts I and II are subject to dismissal. *See* Fed. R. Civ. P. 12(b)(6).

   *2. Interference with contract*

Plaintiff's third count is for interference with contract. He claims that Defendants Atlas, Erin Brady, Precious Properties, and Iesha Fields "had a duty to act in the best interest of Freddie Mac" but engaged in actions that "were intended to induce a breach of the Freddie Mac's written contract with Buyer," and as a result, Freddie Mac breached the Contract. Compl. 11. To state a claim for tortious interference with contract, a plaintiff must allege "'(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff.'" *Hugh v. E Tech Holdings, Inc.*, No. AW-13-1197, 2013 WL

4543402, at *2 (D. Md. Aug. 26, 2013) (quoting *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991) (citations omitted)). The only contract identified in the Complaint is the Contract between Plaintiff and Freddie Mac. Thus, for purposes of this claim, Freddie Mac is the third party that entered into a contract with Plaintiff. As discussed *supra*, Freddie Mac did not breach the Contract. Further, the other Defendants, whom Plaintiff characterizes as agents of Freddie Mac, *see* Compl. ¶ 3, could not have interfered with a contract to which Freddie Mac is a party, because an agent of a party to a contract is "not a third party capable of interfering with the contract." *See Brooks v. Arthur*, 685 F.3d 367, 375 n.2 (4th Cir. 2012). Consequently, Plaintiff fails to allege that any of the Defendants interfered with a contract between Plaintiff and a third party. *See id.* Therefore, Plaintiff has failed to state a claim for interference with contract, *see Hugh*, 2013 WL 4543402, at *2, and Count III is subject to dismissal. *See* Fed. R. Civ. P. 12(b)(6).

### B. Plaintiff's Motion to Amend Complaint

As Defendant notes, in filing his Motion to Amend Complaint unaccompanied by a proposed amended complaint, Plaintiff failed to comply with Local Rule 103.6(a), which requires that "[w]henever a party files a motion requesting leave to file an amended pleading, the original of the proposed amended pleading shall accompany the motion." Defendant also contends that Plaintiff's proposed amendment would be prejudicial to Defendant, is made in bad faith, and is futile. Def.'s Opp'n 4. Specifically, Defendant argues that Plaintiff's Complaint "does not articulate the facts necessary to support Plaintiff's claim of a breach of contract," and "Plaintiff does not propose to correct those deficiencies," such that "the proposed amendment is futile." *Id.* at 5. In Defendant's view, the amendment is a bad faith attempt "to cause delay and to continue to frustrate Freddie Mac's efforts to sell the subject property," because Plaintiff does

not seek to address any of the deficiencies cited in Defendant's Motion to Dismiss in his proposed amended complaint, and Plaintiff did not file his renewed motion for a preliminary injunction until the deadline had passed,[3] at which time he sought an additional forty-five days to file his amended complaint. *Id*. at 5–6. Defendant argues that it will suffer prejudice because it will "continue[] to incur expenses and charges related to property preservation" while it is unable to sell the Property to a third party. *Id.* at 6. Defendant insists that, if Plaintiff is granted leave to amend, twenty-four hours should be sufficient. *Id.*

Whether to grant a motion for leave to amend is within this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15(a)(2) provides the standard for whether to grant a motion for leave to amend that a plaintiff files more than twenty-one days after defendants file a responsive pleading or motion to dismiss but before the Court issues a scheduling order or before the deadline established in the scheduling order. *See id.*; Fed. R. Civ. P. 15(a)(2). Here, Plaintiff filed his Motion to Amend Complaint more than a month after Defendant moved to dismiss, but before I entered the Scheduling Order. Pursuant to Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The Court only should deny leave to amend if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility," *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); *see Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Otherwise, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," and the plaintiff

---

[3] As Defendant notes, my order directed Plaintiff to file any renewed motion "prior to October 8, 2013," Sept. 17, 2013 Ltr. Order 1, and Plaintiff did not file his motion until October 8, 2013. Def.'s Opp'n 6.

moves to amend, the Court should grant the motion so that the plaintiff has the "opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

Determining whether amendment would be futile does not involve "'an evaluation of the underlying merits of the case.'" *MTB Servs.*, 2013 WL 1819944, at *3 (quoting *Next Generation Grp. v. Sylvan Learning Ctrs., LLC.*, No. CCB–11–0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012)). Rather, "the merits of the litigation" are only relevant to the Court's ruling on a motion for leave to amend if "a proposed amendment may clearly be seen to be futile," *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), such as "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards," *Katyle v. Penn Nat'l Gaming Inc.*, 637 F.3d 462, 471 (4th Cir. 2011); *see MTB Servs.*, 2013 WL 1819944, at *3.

Because Plaintiff's three claims must be dismissed for failure to state a claim, and Plaintiff's proposed amendment does not cure the deficiencies in his pleading, the claims would have to be dismissed as amended. *See* Fed. R. Civ. P. 12(b)(6). Therefore, amendment would be futile, and Plaintiff's Motion to Amend Complaint is denied. *See Foman*, 371 U.S. at 182; *Laber*, 438 F.3d at 426; *MTB Servs., Inc.*, 2013 WL 1819944, at *3.

**C. Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order**

The purpose of a preliminary injunction or a TRO is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). A preliminary injunction is distinguished from a TRO only by the difference in notice to the nonmoving party and by the duration of the injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n. 1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)). Notice is not required for a TRO, but the moving

party's attorney, or the movant himself, in the case of a *pro se* party, must "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Moreover, the moving party must "clearly show" by "specific facts in an affidavit or verified complaint" that "immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The substantive standards for a TRO and a preliminary injunction are identical; therefore a district court can consider a motion for a TRO as a request for a preliminary injunction, so long as the opposing party was given notice sufficient to allow for a fair opportunity to oppose it. *Id.* at 283 (citing *Ciena Corp. v. Jarrard*, 203 F.3d 312, 319 (4th Cir. 2000)). As Defendant has received notice, I will consider Plaintiff's motion as a request for a preliminary injunction.

To obtain a preliminary injunction or a TRO, the plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). This is not a balancing test; the plaintiff must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). As a preliminary injunction is "an extraordinary remedy... [it] may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Plaintiff alleges that "Freddie Mac has entered into . . . an agreement to sell the property to a buyer other than Plaintiff and that the transfer of the Property is imminent," such that without a preliminary injunction and temporary restraining order "plaintiff will suffer irreparable harm because rights to the property will transfer to a third party." Pl.'s Mot. 2. Defendant

argues that the Court should not consider Plaintiff's motion because he filed it the day after the deadline set in my September 17, 2013 Order and, instead of filing a supporting memorandum, requested ten additional days to submit a memorandum. Def.'s Opp'n 6–7. Defendant also contends that Plaintiff's motion should be denied because Plaintiff does not meet the standard for granting a preliminary injunction. *Id.* at 7.

As Plaintiff's claims are subject to dismissal, he certainly has not shown that "he is likely to succeed on the merits." *Winter*, 555 U.S. at 20; *see Real Truth*, 575 F.3d at 347. Additionally, as I am denying Plaintiff's Motion to Amend Complaint, the relief Plaintiff requests does not include specific performance, such that he has not shown that "he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20; *see Real Truth*, 575 F.3d at 347. Therefore, Plaintiff is not entitled to a preliminary injunction. *See Winter*, 555 U.S. at 20; *Real Truth*, 575 F.3d at 347.

## III. CONCLUSION

In sum, Plaintiff's Motion to Amend Complaint and to Issue a Preliminary Injunction and Temporary Restraining Order is DENIED, and Defendant Freddie Mac's Motion to Dismiss is GRANTED. Plaintiff's Complaint is DISMISSED, and the Clerk is directed to CLOSE this case.

A separate order shall issue.


Dated: December 18, 2013　　　　　　　　　　　　　　　　　/S/
　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

lyb